UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CC MEXICANO.US, LLC, | 2:14-CV-108 JCM (NJK) |
| Plaintiff(s), | |
| v. | |
| AERO II AVIATION, INC., et al., | |
| Defendant(s). | |

**ORDER**

Presently before the court is plaintiff CC.Mexicano US, LLC's *ex parte* motion for a temporary restraining order. (Doc. # 9).

**I.   Background**

This case involves claims of breach of contract, promissory estoppel, and fraud in the inducement by plaintiff CC.Mexicano US, LLC against defendants Aero II Aviation, Inc. ("Aero II"), George W. Blood, and Stephen L. Crittenden.

Plaintiff claims that, in 2013, it loaned funds on two separate occasions to defendant Aero II in the total amount of $467,000.00. The first of these loans was, according to plaintiff, supposed to be secured by a Gulfstream II aircraft that defendants were planning to purchase. Though plaintiff claims to have transferred some of the promised funds, defendants never actually purchased the aircraft.

. . .

**James C. Mahan**
**U.S. District Judge**

1  Plaintiff alleges that, shortly after the agreement, defendants purchased a different Gulfstream
2  aircraft that had not been discussed during the negotiations and was not subject to the agreement.

3  Plaintiff claims that the second promissory note was made on August 2, 2013, and was to be
4  secured by a bill of sale to a "Hawker Siddley" aircraft. In September, plaintiff and defendants
5  discussed the possibility of a new agreement which would give defendants additional time to repay
6  the pending loans and would be secured by defendants' Gulfstream aircraft instead of the Hawker
7  Siddley.

8  Plaintiff asserts that defendants refused to sign the new agreement when it was presented to
9  them, and also have failed to pay the amount owed under the loan agreements. Defendants are now
10 attempting to sell both the Gulfstream and the Hawker Siddley despite plaintiff's claims that it holds
11 valid security interests in these aircraft.

12 In the instant motion, plaintiff requests that the court issue a temporary restraining order
13 preventing defendants from transferring, selling, disposing of, wasting, or permitting diminution of
14 the Gulfstream, the Hawker Siddley, or any identifiable funds/property derived from the sale of these
15 aircraft.

**II.    Legal Standard**

According to Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. "The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, 2012 WL 5839490, at *2 (D. Nev. 2012) (citing *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)). "Thus, in seeking a temporary restraining order, the movant must demonstrate that the denial of relief will expose him to some significant risk of irreparable injury." *Id.* (quoting *Associated Gen. Contractors of California v. Coalition of Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991)).

**James C. Mahan**
**U.S. District Judge**

- 2 -

The Supreme Court has stated that courts must consider the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

### III. Discussion

Despite plaintiff's claims, the documentation submitted in support of the instant motion does not show that plaintiff has a security interest in either of the aircraft in question. While evidence submitted by plaintiff shows that negotiations took place, the security agreements do not bear the valid signatures of all the necessary parties. The "secured promissory note" which describes the terms of a $600,000 loan to defendants is not signed on behalf of plaintiff. (Doc. # 9-1 p. 12). Another "promissory note" which purports to be secured by the Hawker Siddley's bill of sale similarly lacks a signature on plaintiff's behalf. (Doc. # 9-1 p. 40). The final "secured promissory note" attached to the motion, as plaintiff acknowledges, is not signed by any of the defendants. (Doc. # 9-1 p. 56).

The only agreements that appear to be properly executed grant a security interest in an aircraft that plaintiff concedes was never actually purchased by defendants. (Doc. # 9-1 pp. 2-6, 14-15). Bringing even more doubt to plaintiff's claims is a letter written by defendant Blood which states that no valid agreements exist between plaintiff and defendants, and though negotiations took place, defendants never received any funds from plaintiff. (Doc. # 9-1 pp. 44-46).

Indeed, the documents submitted by plaintiff do not demonstrate that any monetary transfer took place or that any agreement was finalized. In the absence of a valid security agreement, the court finds that plaintiff lacks a likelihood of success on the merits of its claims.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    Accordingly,

2    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's *ex parte* motion

3 for a temporary restraining order (doc. # 9) be, and the same hereby is, DENIED.

4    DATED March 10, 2014.

                                    /s/ James C. Mahan
                                    UNITED STATES DISTRICT JUDGE